IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

**ROBERT EBY,**

    **Plaintiff,**

v.                                                                                          Case No. _____

**ERIC LEVINE,**

    **Defendant.**

_____/

## COMPLAINT

Plaintiff Robert Eby ("Eby"), by and through his undersigned attorneys, hereby files this Complaint against Defendant Eric Levine ("Levine"), stating as follows:

## NATURE OF ACTION

**1.** Eby brings this breach of contract action against Levine, pursuant to Levine's first material breach of a stock purchase agreement and consulting agreement to which Eby and Levine are parties.

**2.** In December 2017, Eby and Levine entered into a Stock Purchase Agreement in which Levine sold Eby his shares in two entities – CSLL Restaurant Corp., and Luncheonette Management Corp.

3. Although Levine sold his shares to Eby, Levine was to remain a consultant to Eby and would be paid a consulting fee, pursuant to the terms of a consulting agreement.

4. Beginning in January 2020, Eby became aware that Levine had breached the confidentiality provisions of the consulting agreement, as well as the inherent obligation of good faith and fair dealing, by accessing restricted areas and by reviewing, copying, and removing Eby's confidential corporate financial documents from such restricted areas.

5. Eby also seeks declaratory relief relating to Section 8 of the Stock Purchase Agreement, as Eby and Levine have expressed divergent views with respect to the use of Levine's line of credit.

6. Eby files this lawsuit monetary for damages in excess of $75,000.00.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over Eby's claims under 28 U.S.C. § 1332(a)(1) because Eby's state of citizenship (New Jersey) is different from Levine's state of citizenship (Florida) and because the amount in controversy exceeds $75,000.00, exclusive of interests, attorneys fees, and costs.

8. Venue is appropriate in this District because both Eby and Levine consented to this venue in the Consulting Agreement, agreeing that "[t]he parties to this Agreement by their execution and delivery hereof hereby (i) irrevocably submit

to the jurisdiction of any Florida State or Federal Court sitting, in each instance, in Palm Beach County, in any action or proceeding arising out of or relating to this Agreement." (Consulting Agreement at § 9).

9. Venue is also appropriate in this District pursuant to 28 U.S.C. § 1391(b)(1), as Levine resides in Palm Beach County, Florida.

10. The Court may exercise personal jurisdiction over Levine because Levine expressly submitted "to the jurisdiction" of this Court in the Consulting Agreement. (Consulting Agreement at § 9).

## FACTUAL ALLEGATIONS

11. On December 1, 2017, Eby and Levine entered into a Stock Purchase Agreement, wherein Eby acquired all of Levine's shares in two corporations. A true and accurate copy of the Stock Purchase Agreement is attached hereto as Exhibit "1."

12. Levine also agreed to serve as a consultant to Eby pursuant to the terms of a Consulting Agreement. A true and accurate copy of the Consulting Agreement is Exhibit B to the Stock Purchase Agreement.

13. One of the entities subject to the Stock Purchase Agreement, CSLL Restaurant Corporation, operates a restaurant in the Upper East Side of Manhattan under the trade name "EJ's Luncheonette."

14. EJ's Luncheonette rents its space, which includes the restaurant located at street level, as well an apartment and office space located above the restaurant.

15. Pursuant to Section 14 of the Stock Purchase Agreement, Levine was only authorized "to access…the use of the Sleeping Area and Bathroom."

16. Section 14 of the Stock Purchase Agreement does not authorize Levine to access the Office Area[1] of the apartment, which is used to "maintain, keep and store the corporate books and records of CSLL and LMC."

17. Section 4 of the Consulting Agreement, entitled Confidential Information, provides in pertinent part:

> "The Consultant [Levine] shall not at any time during the Term or thereafter use for his own benefit and/or reveal, divulge, or publish or make known, directly or indirectly, to any person, firm or corporation, any of the Corporations" [sic] proprietary business information, whether written or oral, that the Consultant has acquired before or during the Term, if any (hereinafter referred to as "Confidential Information")…**The Consultant [Levine] shall not make any copies of Confidential Information without the express prior written consent of the Corporations**.

*See* Exhibit B to Stock Purchase Agreement, § 4 (emphasis added).

18. Beginning in January 2020, Eby became aware that Levine breached the confidentiality provision of the Consulting Agreement by accessing the restricted

---

[1] Levine must pass through the Office Area in order to access the Bathroom from the Sleeping Area. However, under no circumstance did Levine have express or implied consent to use the Office Area for his personal purposes or to access the Office Area for the purposes of snooping, copying, and removing Eby's confidential financial information.

Office Area without authorization, and by snooping through Eby's file cabinets and shelving for the purpose of copying and removing Eby's Confidential Information.

19.     On January 20, 2020, at 12:21 PM EST, Levine, without notice or consent, surreptitiously accessed the bookkeeper's private desk located in the Office Area and opened a sealed interoffice envelope marked "Confidential" that was addressed to Eby's bookkeeper.

20.     After Levine copied all of the contents of the confidential envelope, Levine returned the copied documents to the folder from which they were improperly removed.

21.     On January 20, 2020, at 12:27 PM EST, Levine, without notice or consent, returned to the bookkeeper's private desk to re-tape the envelope that was marked "Confidential," in an effort to cover up Levine's unauthorized access.

22.     On January 20, 2020, at 4:59 PM EST, Levine, without notice or consent, returned to the Office Area and removed a document that he had inadvertently left on the copier, so as to avoid detection by Eby.

23.     On January 21, 2020, at 9:23 PM EST, Levine, without notice or consent, returned to the Office Area, climbed on the office chair to access the confidential corporate files that were stored on the upper shelves above the bookkeeper's private desk and continued to improperly access and review Eby's confidential corporate financials.

24. On January 21, 2020, at 9:25 PM EST, Levine, without notice or consent, removed a bookkeeper file from the bookkeeper's upper shelves and placed the file into his briefcase. Levine never replaced or returned the document to the Office Area.

25. On January 21, 2020, at 9:27 PM EST, Levine, without notice or consent, opened the bookkeeper's files and filing cabinets which contain Eby's confidential corporate sales and payment information and made copies of same.

26. On January 21, 2020, at 9:33 PM EST, Levine, without notice or consent, rummaged through the Office Area to find the password to access the bookkeeper's computer. Levine found the password, gained access to the computer, and accessed Eby's confidential corporate financial information.

27. On January 21, 2020, at 9:36 PM EST, Levine, without notice or consent, printed files from the bookkeeper's computer, which contained Eby's confidential corporate financial information.

28. Levine removed various documents from the office printer, ripped up some of the documents, and attempted to conceal same in the trash can by covering the destroyed documents in paper towel.

29. Levine then placed the files that he did not destroy into Levine's briefcase and removed them from the Office Area.

30. On January 21, 2020, at 10:00 PM EST, Levine again accessed the Office Space, without notice or consent, and used the private office computer to view certain unrelated subject matter apparently for personal pleasure.

31. None of the foregoing actions are authorized, either expressly or impliedly, under the Stock Purchase Agreement or the Consulting Agreement.

32. The action of Levine constitutes material breaches of the Agreements with Eby, in addition to constituting criminal conduct.

33. Levine's actions may constitute violations of the Federal Computer Fraud and Abuse Act. 18 U.S.C. § 1030 et. seq., the Florida Uniform Trade Secrets Act. section 688.001 et. seq., Florida Statutes, and the Florida Computer Crimes Act section 815.01 et. seq., Florida Statutes. Eby reserves the right to amend this Complaint to bring claims pursuant the aforementioned statutes.

34. Levine's improper actions are the natural, direct and proximate cause of damages to Eby.

35. Eby has retained counsel to prosecute this action and is entitled to recover his attorney's fees and costs incurred in the prosecution of this action.

## COUNT I – BREACH OF CONTRACT

36. Eby realleges and incorporates by reference the allegations contained in Paragraphs 1 – 35, as if fully set forth herein.

37. The Stock Purchase Agreement and the Consulting Agreement that Eby and Levine executed are valid, binding contracts.

38. Levine breached the Stock Purchase Agreement by accessing the private Office Area, without Eby's knowledge or consent, for the purpose of copying and stealing Eby's confidential corporate financial information.

39. Levine further breached the Consulting Agreement by making copies of Eby's confidential corporate financial information without Eby's express prior written consent.

40. Levine's breaches have caused Eby damages, in an amount to be proven at trial, including but not limited to the costs Eby incurred to reconfigure the upstairs apartments to ensure Levine can no longer access to the Office Area.

## COUNT II – DECLARATORY JUDGMENT

41. Eby realleges and incorporates by reference the allegations contained in Paragraphs 1- 35, as if fully set forth herein.

42. This is a claim for declaratory judgment.

43. Eby seeks a declaratory judgment that Eby is not required to utilize Levine's discretionary Line of Credit, pursuant to Section 8 of the Stock Purchase Agreement.

44. Section 8 of the Stock Purchase Agreement, provides as follows:

> **Line of Credit. The Seller shall make available** to the Buyer/Robert Eby and Jay Silver a short term line of credit as described in this Article

8 ("LOC"). Funds under the LOC shall be advanced by the Seller, **upon written notice from Buyer/Robert Eby** and Jay Silver, for the sole use of making timely account payments directly to vendors on a credit card in the Seller's name. **All funds advanced under and pursuant to the LOC must be repaid by, Eby** to Seller within thirty (30) calendar days of the date on which the funds were advanced by Seller to Buyer/Robert Eby and Jay Silver ("Repayment Date"). If funds advanced under and pursuant to the LOC are timely repaid by Buyer/Robert Eby and Jay Silver to Seller, no interest will be charged by Seller to the Buyer/Robert Eby and Jay Silver with respect to funds advanced under and pursuant to the LOC, it being agreed that the Seller's sole compensation for providing the LOC shall be any miles and/ or other "affinity points" accrued by the Seller as a result of the amounts charged to Seller's credit card in accordance with the provisions of this Article 8. **Buyer must notify Seller, on or before the fifteenth (15th) of each calendar month, of all LOC advance requests.** Buyer will furnish the following for Seller in connection with advance requests under the LOC: vendor's name, amount payable, QuickBooks report, credit card authorization form (if applicable) and due date of payment. Advances pursuant to the LOC must be in the minimum amount of FIFTY THOUSAND AND 00/100 ($50,000.00) DOLLARS and the maximum amount of ONE HUNDRED THOUSAND AND 00/100 ($100,000.00) DOLLARS per calendar month-; **Seller agrees to make the requested LOC advance sum available every month, if properly requested in accordance with the terms and conditions contained herein.** Seller will provide the Buyer/Robert Eby and Jay Silver with a paid receipt of each sum advanced by Seller on behalf of Buyer/Robert Eby and Jay Silver pursuant to the LOC, detailing the sum advanced and the vendor paid. Seller will provide such notification by electronic mail to Eby and Silver. Such notice by Seller to Buyer/Robert Eby and Jay Silver is deemed received by the Buyer/Robert Eby and Jay Silver when sent by Seller to Eby and Silver. If payment of the sum advanced by Seller to the Buyer/Robert Eby and Jay Silver pursuant to the LOC will not be repaid by the Buyer/Robert Eby and Jay Silver to the Seller by the Repayment Date, The Buyer/Robert Eby and Jay Silver must provide Seller notification at least three (3) calendar days prior to the Repayment Date whether the advanced sum will be repaid to the Seller via: (i) check mailed via overnight service postage pre-paid; or (ii) authorization for electronic transfer from the Buyer/ Eby, or Silver to

Seller. In the event that the Buyer/Eby or Silver cannot timely reimburse Seller the sum advanced by Seller on behalf of the Corporations pursuant to the LOC, the Buyer/Robert Eby and Jay Silver can request, and if Buyer/Robert Eby and Jay Silver is in compliance with all other terms and conditions of this agreement, Seller will grant, an extension of time in which to repay the sum advanced by Seller pursuant to the LOC. Such request for extension by the Buyer/Robert Eby and Jay Silver to Seller, must be actually received by Seller at least (3) calendar days prior to the Repayment Date. This extension of time will not exceed an additional fifteen (15) calendar days. Any extension will incur an extension fee, payable by Corporations to Seller, equivalent to a pre-computed one percent (1%) of the advanced sum for which an extension has been granted by Seller (the "Extension Fee"). The Extension Fee is due and payable by Buyer/Robert Eby and Jay Silver to Seller at the same time repayment of the advanced sum is due, including any extension granted by Seller. The provisions of this Article 8 shall survive the execution and delivery of this Agreement and the redemption of the Shares by the Buyer/Robert Eby and Jay Silver. Buyer/Robert Eby and Jay Silver must and do hereby guarantee the repayment of all monies advanced by Seller on behalf of the Buyer/Robert Eby and Jay Silver pursuant to the LOC for the duration of the term of this Agreement. In the event that Silver sells his Shares to Eby or the Corporations, Jay Silver will be released from any personal obligation after the date of such sale, and Eby will assume the full personal obligation to repay any sums advanced by the Seller on behalf of the Corporations pursuant to the LOC except that Silver shall remain liable for any claim hereunder or under the Guaranty that has ripened and is actually pending as of the date of the closing of Silver's Shares to the Corporations or Eby, as the case may be. Any failure by Buyer/Robert Eby and Jay Silver to timely notify or to timely repay Seller pursuant to this Article 8 constitutes a material default of this Agreement, and entitles Seller to all rights and remedies available at law or in equity, in addition to those remedies available to Seller pursuant to this Agreement. Provided business is in operation at the current location or are location in the Tri-State area, then this agreement shall remain in place.

*See* Exhibit 1 - Stock Purchase Agreement, § 8 (emphasis supplied).

45. There is an actual, present, and practical need for such declaration because Levine has threatened legal action against Eby, claiming that Eby must request from Levine a line of credit advance each month in the minimum amount of $50,000.00.

46. Indeed, on June 8, 2020, Levine's attorney sent a demand letter to Mr. Eby's New York counsel, demanding, among other things, that Eby *must* request a line of credit, pursuant to the Stock Purchase Agreement. A true and accurate copy of Levine's demand letter is attached hereto as Exhibit "2."

47. The permissive language of Section 8 of the Stock Purchase Agreement emphasized in Paragraph 44 above, indicates that the Line of Credit is discretionary; not mandatory as Levine contends.

48. The parties have an actual, present, adverse, and antagonistic interest in fact and law, as to the subject matter of this controversy.

49. The antagonistic and adverse parties are before this Court by proper process.

50. This declaratory judgment action is not merely seeking legal advice, as these disputes are actual and not theoretical. Indeed, by virtue of Levine's June 8, 2020 demand letter, Levine intends to proceed with legal action against Eby.

51. Levine's demands with respect to the Line of Credit advance has caused doubt and uncertainty with respect to the rights and obligations of the parties under

the Stock Purchase Agreement. Eby is entitled to have this doubt and uncertainty removed.

## PRAYER FOR RELIEF

Eby respectfully requests that this Court enter a judgment against Levine, as follows:

A. A judgment in Eby's favor that Levine committed the first material breach of the Stock Purchase Agreement and Consulting Agreement by accessing the Office Area and copying/removing confidential corporate financial documents without Eby's knowledge or permission.

B. An award to Eby of compensatory damages, including interest, in an amount to be proven at trial;

C. An award of injunctive relief against Levine to return all of Eby's confidential corporate financial documents that were wrongfully copied/removed from the Office Area.

D. A declaratory judgment in favor of Eby that the Section 8 of the Stock Purchase Agreement is discretionary in nature, which gives the option, but not the obligation, of Eby to request Line of Credit advance from Levine.

E. Such other relief as the Court deems just and proper under the circumstances.

[Signature on Following Page]

Respectfully Submitted this 10th day of June, 2020.

/s/ Ben Gordon
**Ben Gordon**
Florida Bar No.: 528617
**John A. Libby, Jr.**
[admission to Southern District pending]
Florida Bar No.: 119770
AnchorsGordon, P.A.
2113 Lewis Turner Boulevard, Suite 100
Ft. Walton Beach, FL 32547
Telephone: (850) 863-1974
Facsimile: (850) 863-1591
Email: bgordon@anchorsgordon.com
         jlibby@anchorsgordon.com
Secondary: cyndi@anchorsgordon.com

*Attorneys for Plaintiffs*